## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **PARAMJIT SINGH,** | ) | |
| | ) | **Civil Action No.** |
| **A091-822-575,** | ) | |
| | ) | **ORAL ARGUMENT** |
| **Petitioner/Plaintiff,** | ) | **REQUESTED** |
| **v.** | ) | |
| | ) | PETITION FOR WRIT OF HABEAS |
| **CHAD WOLF, Acting Secretary,** | ) | CORPUS PURSUANT TO 28 U.S.C. |
| **Department of Homeland Security;** | ) | INDEFINITE IMMIGRATION |
| **JOHN TSOUKARIS, Interim Field Office** | ) | DETENTION, AND PETITION FOR |
| **Director, U.S. Immigration and Customs** | ) | FEDERAL INJUNCTION |
| **Enforcement,** | ) | PURSUANT TO 28 U.S.C. 1331. |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

### INTRODUCTION

Petitioner, Mr. Paramjit Singh, hereby petitions this Court for a writ of habeas corpus as well as for a federal injunction to remedy Petitioner's unlawful detention, and to enjoin Petitioner's continued unlawful detention by the Respondent. Mr. Singh challenges his prolonged detention as a violation of the Immigration and Nationality Act ("INA") and the Due Process Clause of the U.S. Constitution. He respectfully requests that this Court order Respondents to show cause why the writ should not be granted within three days and, if necessary, set a

1

hearing on this Petition within five days of the return, pursuant to 28 USC § 2243, and grant him a Writ of Habeas Corpus, ordering Respondents to release him.

In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

## PARTIES

1.    Petitioner, Mr. Paramjit Singh, is a native and citizen of India who has resided in the United States for nearly 28 years.  For the last two and a half years, Mr. Singh has been in the custody of U.S. Immigration and Customs Enforcement ("ICE"), at the Stewart Detention Center in Lumpkin, Georgia.

2.    For more than 15 years, Mr. Singh has been married to his wife, Ms. Anju Bala, and they have two children together.  *See Exhibit A*, Emergency Stay of Removal filed with the BIA.

3.    Respondent, Chad Wolf, is sued in his acting capacity as Acting Secretary of Department of Homeland Security ("DHS").  As Acting Secretary of DHS, Mr. Wolf is responsible for the administration and enforcement of the immigration laws of the United States.

4.    Respondent, John Tsoukaris, is sued in his official capacity as the Interim Atlanta Field Office Director for U.S. Immigration and Customs Enforcement ("ICE").  As Interim Director of the Atlanta Field Office of ICE, Mr. Tsoukaris is responsible for the administration and enforcement of the policies and procedures

2

for ICE's detention of the Petitioner at Stewart County Correction Center
("Adams").

## JURISDICTION

5.    This action arises under the Constitution of the United States, 28 U.S.C.
§ 2241(c)( 1), and the Immigration and Nationality Act, as amended ("INA"), 8
U.S.C. § 1101 et seq.  This Court has subject matter jurisdiction under 28 U.S.C. §
2241, Art. I § 9, cl. 2 of the United States Constitution ("Suspension Clause"), and
28 U.S.C. § 1331, as the Petitioner is presently in custody under color of the
authority of the United States, and such custody is in violation of the Constitution,
laws, or treaties of the United States.  *See Zadvydas v. Davis*, 533 U.S. 678, 688
(2001 ) ("We conclude that § 2241 habeas corpus proceedings remain available as
a forum for statutory and constitutional challenges to post-removal-period
detention."); *see also*, *Demore v. Kim*, 538 U.S. 510 (2003) (evaluating mandatory
detention for pre-removal detainees for the "brief period necessary" to complete
removal proceedings); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (at its historical
core, the writ of habeas corpus has served as a means of reviewing the legality of
executive detention, and it is in that context that its protections have been
strongest."); *Clark v. Martinez*, 543 U.S. 371 (2005) (holding that *Zadvydas*
applies to aliens found inadmissible as well as removable).

6.    Further, this action also arises pursuant to 28 U.S.C. § 1331, federal question

jurisdiction, as this Court has power to issue a federal injunction to force the ICE and the Correctional Center to release Mr. Moreno Atencio so that he will not have to endure the continued burden of unreasonable detention.

## VENUE

7.    Venue lies in the Northern District of Georgia, because Mr. Singh is currently within the territorial jurisdiction, as the Atlanta ICE Field Office maintains custody and control over Mr. Singh's detention. 28 U.S.C. § 1391.

## EXHAUSTION OF REMEDIES

8.    Mr. Singh has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action.

9.    No statutory exhaustion requirements apply to Petitioner's claim of unlawful detention.

10.    The Immigration Court does not have jurisdiction as Petitioner is no longer in immigration proceedings.

## IRREPARABLE INJURY

11.    Petitioner is suffering and will continue to suffer irreparable injury because of the Respondents' unlawful detention.

## STATEMENT OF FACTS

12.    In 2016, Mr. Singh's spouse was the victim of an armed robbery, and in

4

2018, she filed a U visa application with U.S. Citizenship and Immigration Services ("USCIS") – Petitioner is a qualifying family member of the pending application. *See Exhibit B,* Copy of U Visa and related receipt notices.

13.     Mr. Singh was then placed in removal proceedings subsequent to his conviction for the unauthorized use, transfer, acquisition, or possession of SNAP benefits, in the U.S. District Court. *Exhibit A.*

14.     On November 23, 2018, the Vermont Service Center of USCIS issued an Interoffice Memorandum entitled "Determination of Prima Facie eligibility under 8 CFR 214.14(b) for derivative of Anju Bala". *See Exhibit C*, Copy of Determination and related email requests.  To be clear, the entirety of Mr. Singh's criminal history was fully disclosed prior to the Prima Facie Determination.

15.     Additionally, on December 28, 2018, The Vermont Service Center agreed to expedite the processing of Ms. Bala's and Mr. Singh's Applications. *Exhibit C.*

16.     During the pendency of Mr. Singh's application for Derivative U Visa Status, and while detained, Mr. Singh was denied a continuance in the Atlanta Immigration Court and ordered removed. *See Exhibit D*, Copy of BIA Dismissal, dated July 11, 2019.

17.     While Mr. Singh's appeal was pending with the Board of Immigration Appeals ("BIA"), Mr. Singh's spouse submitted a supplemental filing with USCIS on April 2, 2019, as well as responding to a Request for Evidence ("RFE") on

August 7, 2019. *See Exhibit E*, Copy of Supplemental Filing; *Exhibit F*, Copy of RFE Response.

18.     On August 15, 2019, Mr. Singh submitted Form I-246, Application for Stay of Removal with the Atlanta ICE Office of Enforcement and Removal ("ERO"). *See Exhibit G*, Copy of Application for Stay.

19.     On October 24, 2019, Mr. Singh received notice from USCIS granting deferred action status in his pending I-918A Application.  On that same day, a copy of the approval, along ICE's guidance regarding the grant of a stay when deferred action is approved, was emailed to Officer Valdes with ICE.  *See Exhibit H*, Copy of Email from Attorney Elisabeth Ruiz, providing a chronological list of events in late 2019, with approved Deferred Action Notice.  ICE's response was to essentially order that the approved Deferred Action be revoked in Mr. Singh's case. *Id.*

20.     On November 16, 2019, Mr. Singh filed an Emergency Stay of Removal with the BIA during the pendency of a *Sua Sponte* Motion to Reopen, confirming Ms. Balu's request for Deferred Action was approved as of August 29, 2019.  *See Exhibit A*.

21.     On December 19, 2019, Mr. Singh and his spouse once again responded to an RFE that requested the same evidence as previously requested and provided in the prior RFE, as well as in the initial application submission. *See Exhibit I*, Copy

of RFE Response.

22.     On April 29, 2020, the BIA dismissed Mr. Singh's *Sua Sponte* Motion to Reopen and the corresponding Emergency Motion to Stay. *See Exhibit J*, Copy of BIA Decision.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

### a.     *This Court Retains Proper Jurisdiction*

23.     In a petition for habeas corpus under 28 U.S.C. § 2241, the proper respondent is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody over the person detained"). Petitioner anticipates that Respondent will rely on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), to suggest jurisdiction lies in the Middle District of Georgia. However, though the *ruling* in *Padilla*, which is factually distinct from the case at bar, ultimately transferred jurisdiction to the district court where the petitioner was in custody, the *rule* the Supreme Court relied upon – as explained in the *Padilla* decision's progeny discussed below – supports Mr. Singh's position that his petition is properly before this Court.

24.     *Padilla* provided clarity on who the person with custody over the petitioner is by dividing the issue of personal jurisdiction into two questions: first, who is the proper respondent?  And second, does the court have jurisdiction over that person?

*See Padilla*, 542 U.S. at 434.  In *Padilla*, the petitioner was a U.S. citizen who was

taken into federal custody following suspicion of his involvement with the

September 11, 2001, terrorist attacks.  *Id.* at 430.  The Department of Defense,

acting under the authority of the President, took him on a U.S. Naval Brig in

Charleston, South Carolina.  *Id.* at 432.  Mr. Padilla filed a petition for habeas

corpus in the Southern District of New York, naming as respondents the President,

Secretary of Defense, and Commander of the Naval Brig.  *Id.* The Supreme Court

held that the Commander in South Carolina was the proper respondent, and

because the Southern District of New York did not have personal jurisdiction over

him, it found that the petition was not properly filed in that district.

*Id.* at 446-47.

25.    However, in contrast with the circumstances of Mr. Singh's custody, the

Commander of the Naval Brig had the power to produce Mr. Padilla.  The Warden

of SCDC does not have the power to produce Mr. Singh.  Only ICE has that power.

### b.    *Atlanta Interim ICE Field Office Director John Tsoukaris is the Proper Respondent*

26.    As to the first question on determining who is the proper respondent, the

Court articulated a "default rule" known as the "immediate custodian rule," which

established that "the proper respondent is the warden of the facility where the

prisoner is being held," rather than "the Attorney General or some other *remote*

*supervisory* official." *Id.* at 435 (emphasis added). Importantly, however, the Supreme Court recognized that a "default rule" necessarily has exceptions, but no exceptions applied in Mr. Padilla's case. *Id.* at 435-36. Rather, the Supreme Court expressly left open the question of who should be considered the proper respondent where the petitioner is in immigration custody. *Id.* at 435 n. 8. The question before this Court is not whether there generally can be more than one respondent, but rather whether the present situation falls within an exception to the default immediate

custodian rule. *See Padilla* at 460 (Stevens, J, dissenting) (describing the "bright-line rule" articulated by the majority as "far from bright," and listing four specific exceptions to the rule).

27.     The Eleventh Circuit has not addressed the specific question of whether the default rule applies in immigration-related detention where petitioner is housed at a non-federal facility contracted by ICE.  However, several district courts in other circuits have addressed this question, and have answered that the "immediate custodian rule must take account" of those facts. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017) (the proper respondent is "the federal official most directly responsible for overseeing that contract facility.").  For example, the Northern District of California articulated this critical distinction between the petitioner in *Padilla*, who was in federal custody in a federal facility, and the

9

petitioner in *Saravia*, who was "held in a facility run by an entity *other* than the federal government, pursuant to a contract with the federal government." *Id.* (emphasis added). Accordingly, the default rule could not apply to the petitioner in *Saravia*.

28.    In coming to this conclusion, the district court in *Saravia* looked to the Supreme Court's directive in *Padilla* to name as respondent the person with "the power to produce the body of [the petitioner] before the court." *Id.* at 1186 (quoting *Padilla*, 542 U.S. at 435). Taking into account the nature of the petitioner's custody, it observed that the warden of the county facility "has custody of an immigration detainee . . . only to the extent provided by the facility's contract with the federal government." *Id.* Indeed, "it is pursuant to the power and authority of the federal government—not [the c]ounty—that [the petitioner] is in custody." *Id.*

29.    Therefore, in the specific situation where a federal detainee is held in a facility operated by a private company or nonprofit, the district court identified as the proper respondent not "the individual in charge of the contract facility," but "the federal official most directly responsible for overseeing that contract facility." *Id.* at 1185.

30.    This rule is consistent with *Padilla* in that it does not circumvent the Supreme Court's instruction to not "look to the official who exercises legal control

over the petitioner," as that would result in the Attorney General or other high-ranking remote officials being named as the sole respondent in every habeas petition. *Id.* (citing *Padilla*, 542 U.S. at 439-40). Rather than a non-federal actor who is "poorly situated to defend federal interests," *Padilla* supports that the respondent should be the "*federal* actor with immediate control over the petitioner." *Saravia*,

280 F. Supp. 3d at 1186 (emphasis original).

31.    Similarly, other district courts have noted that "the *Padilla* Court was primarily concerned with a [noncitizen] exploiting the fact that there exist officials with 'remote supervisory authority,' like the Secretary of Defense, who may be sued in any district" and which have addressed situations where the site of detention is a non-federal facility. *You v. Nielsen*, 321 F. Supp. 3d 451, 460-61 (S.D.N.Y. 2018) (where petitioner was detained at Bergen County Jail in Hackensack, New Jersey – a non-federal facility under contract with the federal government – "predicating venue on the location of Petitioner's ICE custodians [the Field Office Director of the New York City Field Office for ICE] is more faithful to the Supreme Court's dictates in *Padilla* than predicating it on the location of a non-ICE contractor"); *see also Rodriguez-Sanchez v. Decker*, 18-cv-8798 (AJN), 2019 WL 3840977 at *2 (S.D.N.Y. Aug. 15, 2019) (same; recognizing that "[t]o say that the Assistant U.S. Attorney can represent the warden

11

is not an answer; it is the warden who is the real party in interest, not the lawyer

chosen to represent him.") (quoting *Matias Madera v. Decker*, No. 18 Civ. 7314

(AKH), Dkt. No. 30 at 7 (S.D.N.Y. Sept 28, 2018)); *Calderon v. Sessions*, 330 F.

Supp. 3d. 944, 953 (S.D.N.Y. 2018) (stating "when the warden of the detention

facility has no literal power to produce the petitioner, and cannot provide

meaningful answers to important factual and legal questions, there is no reason to

apply the immediate custodian rule."); *Naranjo-Delgado v. United States*, No.

CIV-18-1061-R, 2019 WL 2342689 at *1 n. 1 (W.D. Okla. June 3, 2019) (holding

that the proper respondent in a federal prisoner's habeas petition was the federal

official in charge of overseeing the private facility where the petitioner was held,

not the warden of the private correctional facility); *c.f. Wolfgramm v. Sawyer*, CIV-

19-859-SLP, 2019 WL 7407400 at n.1 (W.D. Okla. Nov. 18, 2019), *adopted by*

2020 WL 33750 (W.D. Okla. Jan. 2, 2020) (holding that the petition was moot, but

suggesting that the Director of the Bureau of Prisons was the proper respondent

rather than the warden of the contracted facility).

32.    In the present case, Mr. Singh is under the legal custody of ICE, a federal

agency, through the Atlanta ICE Field Office, and not the warden of Stewart

County Detention Center.  *See* Section I, *supra*; *see also Cruz v. Decker*, No. 18-

CV-9948 (GBD) (OTW), 2019 WL 4038555 at *3-*4 (S.D.N.Y. Aug. 27, 2019)

(evaluating the extent of ICE control over day-to-day issues at a contract facility).

The warden has no "literal power to produce the petitioner;" therefore, ICE, through the ICE Atlanta Field Office, is the actor that exerts actual "day-to-day control" over Mr. Singh and determines the conditions of his detention. *See Calderon*, 330 F. Supp. 3d at 953; *Padilla*, 542 U.S. at 439.8.

33.     Practically, if this Court were to require a respondent to physically produce Petitioner's body to the Court, it would be ICE, *not* the Stewart County Detention Center Warden, who would have the power to do so. Accordingly, Respondent John Tsoukaris, as the Acting Director of the Atlanta ICE Field Office, is therefore the proper respondent.

### c.    *This Court Has Jurisdiction Over Respondent John Tsoukaris*

34.     With respect to this Court's jurisdiction over Petitioner's habeas petition, given than John Tsoukaris is the proper respondent, as he exercises actual control over Mr. Singh, this petition was properly filed in this district because the district has jurisdiction over John Tsoukaris.

35.     This issue was addressed by the Supreme Court in *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973). There, a petitioner challenged his future confinement in Kentucky while detained in Alabama. In that case, the Supreme Court simply required "that the court issuing the writ have jurisdiction over the custodian." *Id.* at 494-95 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885) ("The writ of habeas corpus does not act upon the prisoner who seeks relief,

but upon the person who holds him in what is alleged to be unlawful custody.")).

*Padilla* did not overrule *Braden*, but reconciled it with the default rule. 542 U.S. at

444. Applying the default rule, which is inapplicable to the case at hand, the

*Padilla* Court held that the respondent would naturally be in the same district as

the petitioner's confinement.9  *Id.* at 444.  However, where the federal officer with

immediate control over the petitioner is located in another district, the standard

articulated in *Braden* is appropriate.  As here, where the default rule is

inapplicable, *Braden* holds that jurisdiction lies in the district where John

Tsoukaris, the *respondent*, is located.

Therefore, Respondent John Tsoukaris acting as the Field Office Director for the

Atlanta ICE Field Office, and who is located within the jurisdiction of the Northern

District of Georgia, is the appropriate respondent to Mr. Singh's petition for habeas

corpus.

### d.    This Court Has Authority to Order Petitioner's Release to Vindicate His Due Process Rights

36.    In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6), when "read

in light of the Constitution's demands, limits an alien's post-removal-period

detention to a period reasonably necessary to bring about that alien's removal from

the United States." 533 U.S. at 689.  A "habeas court must [first] ask whether the

14

detention in question exceeds a period reasonably necessary to secure removal." *Id.*
at 699. If the individual's removal "is not reasonably foreseeable, the court should
hold continued detention unreasonable and no longer authorized by statute." *Id.* at
699-700.

37.    Following a final order of removal, ICE is directed by statute to detain an
individual for 90 days to effectuate removal. 8 U.S.C. § 1231(a)(2). This 90-day
period, also known as "the removal period," generally commences as soon as a
removal order becomes administratively final. 8 U.S.C. § 1231(a)(1)(A), §
1231(a)(1)(B).

38.    If ICE fails to remove an individual during the 90-day removal period, the
law requires ICE to release the individual under conditions of supervision,
including periodic reporting. 8 U.S.C. § 1231(a)(3) ("If the alien . . . is not
removed within the removal period, the alien, pending removal, shall be subject to
supervision."). Limited exceptions to this rule exist. Specifically, ICE "may"
detain an individual beyond 90 days if the individual was ordered removed on
criminal grounds or is determined to pose a danger or flight risk. 8 U.S.C. §
1231(a)(6). However, ICE's authority to detain an individual beyond the removal
period under such circumstances is not boundless. Rather, it is constrained by the
constitutional requirement that detention "bear a reasonable relationship to the
purpose for which the individual [was] committed." *Zadvydas v. Davis*, 533 U.S.

678, 690 (2001) (citations omitted). Because the principal purpose of the post-final-order detention statute is not to effectuate removal, detention bears no reasonable relation to its purpose if removal cannot be effectuated. *Id.* at 697.

39.     The United State Supreme Court has accordingly construed Section 1231(a)(6) as authorizing post-final order detention only for a "period reasonably necessary to secure removal," a period that the Court determined to be presumptively six months. *Id.* at 699-701. After this six month period, if a detainee provides "good reason" to believe that his or her removal is not significantly likely in the reasonably foreseeable future, "the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the government cannot do so, the individual must be released.

40.     Indeed, detainees are entitled to release even before six months of detention, as long as removal is not reasonably foreseeable. *See* 8 C.F.R. § 241.13(b)(1) (authorizing release after 90 days where removal not reasonably foreseeable). Moreover, as the period of post-final-order detention grows what counts as "reasonably foreseeable" must conversely shrink. *Zadvydas* at 701.

41.     Even where detention meets the *Zadvydas* standard for reasonable foreseeability, detention violates the Due Process Clause unless it is "reasonably related" to the government's purpose, which is to prevent danger or flight risk. *See Zadvydas*, 533 U.S. at 690–91 (discussing twin justifications of detention as

16

preventing flight and protecting the community). Thus, due process requires a meaningful determination that Petitioners pose a danger or flight risk that warrants post-final-order detention, regardless of whether their removal can be effectuated within a reasonable period of time.

42.    The government's own regulations contemplate this requirement. They dictate that even after ICE determines that removal is reasonably foreseeable—and that detention therefore does not *per se* exceed statutory authority—the government must still determine whether *continued* detention is warranted based on flight risk or danger. *See* 8 C.F.R. § 241.13(g)(2) (providing that where removal is reasonably foreseeable, "detention will continue to be governed under the established standards" in 8 C.F.R. § 241.4).

43.    The regulations, at 8 C.F.R. § 241.4, set forth the custody review process that existed even before the Supreme Court's decision in *Zadvydas*. This mandated process, known as the post-order custody review, requires ICE to conduct "90-day custody reviews" prior to expiration of the 90-day removal period and to consider release of individuals who pose no danger or flight risk, 8 C.F.R. § 241.4(e)-(f). Among the factors to be considered in these custody reviews are "ties to the United States such as the number of close relatives residing here lawfully;" whether the noncitizen "is a significant flight risk;" and "any other information that is probative of whether" the noncitizen is likely to "adjust to life in a community," "engage in

further acts of violence," "engage in future criminal activity," pose a danger to themselves or others, or "violate the conditions of his or her release from immigration custody pending removal from the United States." *Id.*

44.    Individuals with final orders who are released after a post-order custody review are subject to orders of supervision. 8 C.F.R. § 241.4(j). After an individual has been released on an order of supervision, ICE cannot revoke such an order without cause or adequate legal process.

45.    Finally, ICE's tactic to immediately demand the revocation of Mr. Singh's approved Deferred Action Status by USCIS was a clear abuse of discretion. ICE's motive was for the sole purpose of clearing a path for Mr. Singh's removal, and it was an egregious act by the Agency to separate Mr. Singh from his wife and two children.

46.    Mr. Singh received the protection he needed at the discretion of USCIS after a complete review of his Application and underlying criminal issues, and ICE arbitrarily stripped him of that protection.

## CLAIMS FOR RELIEF

### COUNT ONE

### STATUTORY VIOLATION

47.    The foregoing allegations are realleged and incorporated herein.

48.    Mr. Singh's continued detention by the Respondent violates 8 U.S.C. § 1231

18

(a)(6), as interpreted in the precedent case law.  Mr. Singh's detention for

approximately 16 months *after* his order or removal is unreasonable.  Given the

circumstances of Petitioner's detention, the pending U visa, the approval and grant

of an expedited prima facie determination and deferred action status before

arbitrary revocation, Petitioner's continued detention is without justification. For

the reasons outlined above in paragraphs 1 to 46, Petitioner should be released

immediately.

**COUNT TWO**

**SUBSTANTIVE DUE PROCESS VIOLATION**

49.    Mr. Singh re-alleges and incorporates by reference paragraphs 1 through 48

above.

50.    Mr. Singh's continued detention violates his right to substantive due process

by depriving him of his core liberty interest to be free from bodily restraint. *See,*

*e.g., Tam v. INS*, 14 F.Supp.2d 1184 (E.D. Cal 1998)(aliens retain substantive due

process rights).  The Due Process Clause requires that the deprivation of

petitioner's liberty be narrowly tailored to serve a compelling government interest.

*See Reno v. Flores*, 507 U.S. 292, 301-02 (1993).  Respondents do not have a

compelling government interest in detaining Mr. Singh post-removal-order, and

after the designated statutory period. The Supreme Court in *Zadvydas* thus

interpreted 8 U.S.C. § 1231(a) to allow continued detention only for a period

reasonably necessary to secure the alien's removal because any other reading

would go beyond the government's articulated interest-- to effect the alien's

removal. *See Kay v. Reno*, 94 F.Supp.2d 546, 551 (M.D. Pa. 2000) (granting writ

of habeas corpus because petitioner's substantive due process rights were violated,

and noting that "[i]f deportation can never occur, the government's primary

legitimate purpose in detention--executing removal--is nonsensical"). Again, *Ly v.*

*Hansen* takes the position that *Zadvydas* is not only limited to post removal

detention, but that pre-removal detainees should be accorded the very same liberty

interests.

## COUNT THREE

## PROCEDURAL DUE PROCESS VIOLATION

51.    Petitioner re-alleges and incorporates by reference paragraphs 1 through 50

above.

52.    Under the Due Process Clause of the United States Constitution, an alien is

entitled to a timely and meaningful opportunity to demonstrate that he should not

be detained. In the instant case, Mr. Singh has been denied that opportunity as

there is no administrative mechanism in place for him to demand a decision or

ensure that a decision will ever be made.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1)    Assume jurisdiction over this matter;

2)    Issue an Order to Show Cause within ***three*** days of the filing of this petition;

3)    Schedule an immediate hearing to determine the custody status of Mr.

Singh;

4)    Grant Mr. Singh a Writ of Habeas Corpus directing the Respondents to

immediately release him from custody under reasonable conditions of supervision;

and

5)    Grant any other and further relief which this Court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct.


Respectfully submitted this 22nd day of May, 2020.


KUCK BAXTER IMMIGRATION LLC,

/s/ Danielle M. Claffey
Danielle M. Claffey
GA Bar Number: 222292
365 Northridge Road, Suite 300
Atlanta, GA 30350
Phone: 404-949-8151
Fax: 404-816-8615

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 22nd day of May, 2020, the foregoing **PETITION FOR A WRIT OF HABEAS CORPUS AND PETITION FOR FEDERAL INJUNCTION** and its accompanying Exhibits were served by First Class Mail, postage pre-paid, on:

Chad Wolf
Acting Secretary, Department of Homeland Security
425 I Street
Washington, D.C. 20536

John Tsoukaris
Interim Atlanta Field Office Director,
U.S. Immigration and Customs Enforcement
180 Ted Turner Drive, SW
Atlanta, Georgia 30350

Byung J. Pak, U.S. Attorney
Federal District Court, Northern District of Georgia
The United States Attorney's Office, Richard B. Russell Federal Building
75 Ted Turner Drive, S.W., Suite 600
Atlanta, Georgia 30303-3309

KUCK BAXTER IMMIGRATION LLC,

/s/ Danielle M. Claffey
Danielle M. Claffey
GA Bar Number: 222292
365 Northridge Road, Suite 300
Atlanta, GA 30350
Phone: 404-949-8151
Fax: 404-816-8615

22

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

PARAMJIT SINGH,                          )
                                         )   Civil Action No.
A091-822-575,                            )
                                         )   ORAL ARGUMENT
                    Petitioner/Plaintiff,)   REQUESTED
         v.                              )
                                         ) PETITION FOR WRIT OF HABEAS
CHAD WOLF, Acting Secretary,             ) CORPUS PURSUANT TO 28 U.S.C.
Department of Homeland Security;         ) INDEFINITE IMMIGRATION
JOHN TSOUKARIS, Interim Field Office     ) DETENTION, AND PETITION FOR
Director, U.S. Immigration and Customs   ) FEDERAL INJUNCTION
Enforcement,                             ) PURSUANT TO 28 U.S.C. 1331.
                                         )
                                         )
                    Defendants.          )
_____)

## LIST OF EXHIBITS

Exhibit A          Emergency Stay of Removal filed with the BIA

Exhibit B          Copy of U Visa and related receipt notices

Exhibit C          May 15, 2019 Article from The Hill

Exhibit D          Copy of BIA Dismissal, dated July 11, 2019

Exhibit E          Copy of Supplemental Filing

Exhibit F          Copy of RFE Response

Exhibit G          Copy of Application for Stay

Exhibit H          Copy of Email from Attorney Elisabeth Ruiz, providing a

23

chronological list of events in late 2019, with approved
Deferred Action Notice

Exhibit I               Copy of RFE Response

Exhibit J               Copy of BIA Decision