## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| PARAMJIT SINGH, | ) | |
| | ) | **Civil Action No.** |
| A091-822-575, | ) | |
| | ) | **1:20-cv-02212-AT-LTW** |
| Petitioner/Plaintiff, | ) | |
| v. | ) | |
| | ) | **FIRST AMENDED PETITION FOR** |
| CHAD WOLF, Acting Secretary, | ) | **WRIT OF HABEAS CORPUS** |
| Department of Homeland Security; | ) | |
| THOMAS GILES, Acting Field Office | ) | |
| Director, U.S. Immigration and Customs | ) | |
| Enforcement[1], MARK KOUMANS, | ) | |
| Acting Director, U.S. Citizenship and | ) | |
| Immigration Services, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS

## INTRODUCTION

Petitioner, Mr. Paramjit Singh, hereby petitions this Court for a writ of

habeas corpus as well as for a federal injunction to remedy Petitioner's unlawful

detention, and to enjoin Petitioner's continued unlawful detention by the

Respondent.  Mr. Singh challenges his prolonged detention as a violation of the

Immigration and Nationality Act ("INA") and the Due Process Clause of the U.S.

---

[1] Acting Field Office Director Giles replaced former Interim Field Office Director, John Tsoukaris, sometime between April 2020 and the filing of the Complaint in this action.  (*See Ex. 1*, Complaint)

Constitution. He respectfully requests that this Court order Respondents to show

cause why the writ should not be granted within three days and, if necessary, set a

hearing on this Petition within five days of the return, pursuant to 28 USC § 2243,

and grant him a Writ of Habeas Corpus, ordering Respondents to release him.

In support of this petition and complaint for injunctive relief, Petitioner

alleges as follows:

## PARTIES

1.      Petitioner, Mr. Paramjit Singh, is a native and citizen of India who has

resided in the United States for nearly 28 years. For the last two and a half years,

Mr. Singh has been in the custody of U.S. Immigration and Customs Enforcement

("ICE"), at the Stewart Detention Center in Lumpkin, Georgia.

2.      For more than 15 years, Mr. Singh has been married to his wife, Ms. Anju

Bala, and they have two children together. *See Exhibit A*, Emergency Stay of

Removal filed with the BIA.

3.      Respondent, Chad Wolf, is sued in his acting capacity as Acting Secretary of

Department of Homeland Security ("DHS"). As Acting Secretary of DHS, Mr.

Wolf is responsible for the administration and enforcement of the immigration

laws of the United States.

4.      Respondent, Thomas Giles, is sued in his official capacity as the Acting

Atlanta Field Office Director for U.S. Immigration and Customs Enforcement

2

("ICE"). As Acting Director of the Atlanta Field Office of ICE, Mr. Giles is responsible for the administration and enforcement of the policies and procedures for ICE's detention of the Petitioner at Stewart County Correction Center.

5.     Respondent, Mark Koumans, is sued in his official capacity as the Acting Director of U.S. Citizenship and Immigration Services ("USCIS"). As Acting Director of USCIS, Mr. Koumans is responsible for the administration of the policies and procedures of USCIS.

## JURISDICTION

6.     This action arises under the Constitution of the United States, the Immigration and Nationality Act, as amended ("INA"), 8 U.S.C. § 1101 *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*; and 28 U.S.C. § 1361 (Mandamus).

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 2241, Art. I § 9, cl. 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. § 1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001 ) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also, Demore v. Kim*, 538 U.S. 510 (2003) (evaluating mandatory detention for

3

pre-removal detainees for the "brief period necessary" to complete removal proceedings); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest."); *Clark v. Martinez*, 543 U.S. 371 (2005) (holding that *Zadvydas* applies to aliens found inadmissible as well as removable).

8.      This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702 (Administrative Procedures Act), the Declaratory Judgment Act, 28 U.S.C. §2201 et seq., 28 U.S.C. § 1361 (Mandamus), and the All Writs Act, 28 U.S.C. § 1651. Further, this action also arises pursuant to 28 U.S.C. § 1331, federal question jurisdiction, as this Court has power to issue a federal injunction to force the ICE and the Correctional Center to release Mr. Singh so that he will not have to endure the continued burden of unreasonable detention.

**VENUE**

9.      Venue lies in the Northern District of Georgia, because Mr. Singh is currently within the territorial jurisdiction, as the Atlanta ICE Field Office maintains custody and control over Mr. Singh's detention. 28 U.S.C. § 1391.

**EXHAUSTION OF REMEDIES**

10.     Mr. Singh has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action.

11.     No statutory exhaustion requirements apply to Petitioner's claim of unlawful

detention, and the Immigration Court does not have jurisdiction as Petitioner is no

longer in immigration proceedings.

## IRREPARABLE INJURY

12.     Petitioner is suffering and will continue to suffer irreparable injury because

of the Respondents' unlawful detention.

## STATEMENT OF FACTS

13.     In 2016, Mr. Singh's spouse was the victim of an armed robbery, and in

2018, she filed a U visa application with U.S. Citizenship and Immigration

Services ("USCIS") – Petitioner is a qualifying family member of the pending

application. *See Exhibit B,* Copy of U Visa and related receipt notices.

14.     Mr. Singh was then placed in removal proceedings subsequent to his

conviction for the unauthorized use, transfer, acquisition, or possession of SNAP

benefits, in the U.S. District Court. *Exhibit A.*

15.     On November 23, 2018, the Vermont Service Center of USCIS issued an

Interoffice Memorandum entitled "Determination of Prima Facie eligibility under 8

CFR 214.14(b) for derivative of Anju Bala". *See Exhibit C*, Copy of

Determination and related email requests.  To be clear, the entirety of Mr. Singh's

criminal history was fully disclosed prior to the Prima Facie Determination.

16.     Additionally, on December 28, 2018, The Vermont Service Center agreed to

expedite the processing of Ms. Bala's and Mr. Singh's Applications. *Exhibit C.*

17.    During the pendency of Mr. Singh's application for Derivative U Visa

Status, and while detained, Mr. Singh was denied a continuance in the Atlanta

Immigration Court and ordered removed. *See Exhibit D*, Copy of BIA Dismissal,

dated July 11, 2019.

18.    While Mr. Singh's appeal was pending with the Board of Immigration

Appeals ("BIA"), Mr. Singh's spouse submitted a supplemental filing with USCIS

on April 2, 2019, as well as responding to a Request for Evidence ("RFE") on

August 7, 2019. *See Exhibit E*, Copy of Supplemental Filing; *Exhibit F*, Copy of

RFE Response.

19.    On August 15, 2019, Mr. Singh submitted Form I-246, Application for Stay

of Removal with the Atlanta ICE Office of Enforcement and Removal ("ERO").

*See Exhibit G*, Copy of Application for Stay.

20.    On October 24, 2019, Mr. Singh received notice from USCIS granting

deferred action status in his pending I-918A Application. On that same day, a

copy of the approval, along with ICE's guidance regarding the grant of a stay when

deferred action is approved, was emailed to Officer Valdes with ICE. *See Exhibit

H*, Copy of Email from Attorney Elisabeth Ruiz, providing a chronological list of

events in late 2019, with approved Deferred Action Notice. ICE's response was to

essentially order that the approved Deferred Action be revoked in Mr. Singh's

case. *Id.*

21.    On November 16, 2019, Mr. Singh filed an Emergency Stay of Removal with the BIA during the pendency of a *Sua Sponte* Motion to Reopen, confirming Ms. Balu's request for Deferred Action was approved as of August 29, 2019. *See Exhibit A.*

22.    On December 19, 2019, Mr. Singh and his spouse once again responded to an RFE that requested the same evidence as previously requested and provided in the prior RFE, as well as in the initial application submission. *See Exhibit I*, Copy of RFE Response.

23.    On April 29, 2020, the BIA dismissed Mr. Singh's *Sua Sponte* Motion to Reopen and the corresponding Emergency Motion to Stay. *See Exhibit J*, Copy of BIA Decision.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

### *I.    This Court Retains Proper Jurisdiction*

24.    In a petition for habeas corpus under 28 U.S.C. § 2241, the proper respondent is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody over the person detained"). Petitioner anticipates that Respondent will rely on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), to suggest jurisdiction lies in the Middle District of Georgia. However, though the *ruling* in

*Padilla*, which is factually distinct from the case at bar, ultimately transferred

jurisdiction to the district court where the petitioner was in custody, the *rule* the

Supreme Court relied upon – as explained in the *Padilla* decision's progeny

discussed below – supports Mr. Singh's position that his petition is properly before

this Court.

25.    *Padilla* provided clarity on who the person with custody over the petitioner

is by dividing the issue of personal jurisdiction into two questions: first, who is the

proper respondent?  And second, does the court have jurisdiction over that person?

*See Padilla*, 542 U.S. at 434.  In *Padilla*, the petitioner was a U.S. citizen who was

taken into federal custody following suspicion of his involvement with the

September 11, 2001, terrorist attacks.  *Id.* at 430.  The Department of Defense,

acting under the authority of the President, took him on a U.S. Naval Brig in

Charleston, South Carolina.  *Id.* at 432.  Mr. Padilla filed a petition for habeas

corpus in the Southern District of New York, naming as respondents the President,

Secretary of Defense, and Commander of the Naval Brig.  *Id.* The Supreme Court

held that the Commander in South Carolina was the proper respondent, and

because the Southern District of New York did not have personal jurisdiction over

him, it found that the petition was not properly filed in that district.

*Id.* at 446-47.

26.    However, in contrast with the circumstances of Mr. Singh's custody, the

Commander of the Naval Brig had the power to produce Mr. Padilla. The Warden of SCDC does not have the power to produce Mr. Singh. Only ICE has that power.

## II.     *Acting ICE Field Office Director Thomas Giles is the Proper Respondent*

27.     As to the first question on determining who is the proper respondent, the Court articulated a "default rule" known as the "immediate custodian rule," which established that "the proper respondent is the warden of the facility where the prisoner is being held," rather than "the Attorney General or some other *remote supervisory* official." *Id.* at 435 (emphasis added). Importantly, however, the Supreme Court recognized that a "default rule" necessarily has exceptions, but no exceptions applied in Mr. Padilla's case. *Id.* at 435-36. Rather, the Supreme Court expressly left open the question of who should be considered the proper respondent where the petitioner is in immigration custody. *Id.* at 435 n. 8. The question before this Court is not whether there generally can be more than one respondent, but rather whether the present situation falls within an exception to the default immediate custodian rule. *See Padilla* at 460 (Stevens, J, dissenting) (describing the "bright-line rule" articulated by the majority as "far from bright," and listing four specific exceptions to the rule).

28.     The Eleventh Circuit has not addressed the specific question of whether the default rule applies in immigration-related detention where petitioner is housed at a

9

non-federal facility contracted by ICE. However, several district courts in other circuits have addressed this question, and have answered that the "immediate custodian rule must take account" of those facts. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1185 (N.D. Cal. 2017) (the proper respondent is "the federal official most directly responsible for overseeing that contract facility."). For example, the Northern District of California articulated this critical distinction between the petitioner in *Padilla*, who was in federal custody in a federal facility, and the petitioner in *Saravia*, who was "held in a facility run by an entity *other* than the federal government, pursuant to a contract with the federal government." *Id.* (emphasis added). Accordingly, the default rule could not apply to the petitioner in *Saravia*.

29.    In coming to this conclusion, the district court in *Saravia* looked to the Supreme Court's directive in *Padilla* to name as respondent the person with "the power to produce the body of [the petitioner] before the court." *Id.* at 1186 (quoting *Padilla*, 542 U.S. at 435). Taking into account the nature of the petitioner's custody, it observed that the warden of the county facility "has custody of an immigration detainee . . . only to the extent provided by the facility's contract with the federal government." *Id.* Indeed, "it is pursuant to the power and authority of the federal government—not [the c]ounty—that [the petitioner] is in custody." *Id.*

30.    Therefore, in the specific situation where a federal detainee is held in a

facility operated by a private company or nonprofit, the district court identified as

the proper respondent not "the individual in charge of the contract facility," but

"the federal official most directly responsible for overseeing that contract facility."

*Id.* at 1185.

31.    This rule is consistent with *Padilla* in that it does not circumvent the

Supreme Court's instruction to not "look to the official who exercises legal control

over the petitioner," as that would result in the Attorney General or other high-

ranking remote officials being named as the sole respondent in every habeas

petition. *Id.* (citing *Padilla*, 542 U.S. at 439-40). Rather than a non-federal actor

who is "poorly situated to defend federal interests," *Padilla* supports that the

respondent should be the "*federal* actor with immediate control over the

petitioner." *Saravia*,

280 F. Supp. 3d at 1186 (emphasis original).

32.    Similarly, other district courts have noted that "the *Padilla* Court was

primarily concerned with a [noncitizen] exploiting the fact that there exist officials

with 'remote supervisory authority,' like the Secretary of Defense, who may be

sued in any district" and which have addressed situations where the site of

detention is a non-federal facility. *You v. Nielsen*, 321 F. Supp. 3d 451, 460-61

(S.D.N.Y. 2018) (where petitioner was detained at Bergen County Jail in

Hackensack, New Jersey – a non-federal facility under contract with the federal government – "predicating venue on the location of Petitioner's ICE custodians [the Field Office Director of the New York City Field Office for ICE] is more faithful to the Supreme Court's dictates in *Padilla* than predicating it on the location of a non-ICE contractor"); *see also Rodriguez-Sanchez v. Decker*, 18-cv-8798 (AJN), 2019 WL 3840977 at *2 (S.D.N.Y. Aug. 15, 2019) (same; recognizing that "[t]o say that the Assistant U.S. Attorney can represent the warden is not an answer; it is the warden who is the real party in interest, not the lawyer chosen to represent him.") (quoting *Matias Madera v. Decker*, No. 18 Civ. 7314 (AKH), Dkt. No. 30 at 7 (S.D.N.Y. Sept 28, 2018)); *Calderon v. Sessions*, 330 F. Supp. 3d. 944, 953 (S.D.N.Y. 2018) (stating "when the warden of the detention facility has no literal power to produce the petitioner, and cannot provide meaningful answers to important factual and legal questions, there is no reason to apply the immediate custodian rule."); *Naranjo-Delgado v. United States*, No. CIV-18-1061-R, 2019 WL 2342689 at *1 n. 1 (W.D. Okla. June 3, 2019) (holding that the proper respondent in a federal prisoner's habeas petition was the federal official in charge of overseeing the private facility where the petitioner was held, not the warden of the private correctional facility); *c.f. Wolfgramm v. Sawyer*, CIV-19-859-SLP, 2019 WL 7407400 at n.1 (W.D. Okla. Nov. 18, 2019), *adopted by* 2020 WL 33750 (W.D. Okla. Jan. 2, 2020) (holding that the petition was moot, but

suggesting that the Director of the Bureau of Prisons was the proper respondent rather than the warden of the contracted facility).

33.    In the present case, Mr. Singh is under the legal custody of ICE, a federal agency, through the Atlanta ICE Field Office, and not the warden of Stewart County Detention Center.  *See* Section I, *supra*; *see also Cruz v. Decker*, No. 18-CV-9948 (GBD) (OTW), 2019 WL 4038555 at *3-*4 (S.D.N.Y. Aug. 27, 2019) (evaluating the extent of ICE control over day-to-day issues at a contract facility). The warden has no "literal power to produce the petitioner;" therefore, ICE, through the ICE Atlanta Field Office, is the actor that exerts actual "day-to-day control" over Mr. Singh and determines the conditions of his detention.  *See Calderon*, 330 F. Supp. 3d at 953; *Padilla*, 542 U.S. at 439.8.

34.    Practically, if this Court were to require a respondent to physically produce Petitioner's body to the Court, it would be ICE, *not* the Stewart County Detention Center Warden, who would have the power to do so.  Accordingly, Respondent Thomas Giles, as the Acting Director of the Atlanta ICE Field Office, is therefore the proper respondent.

### III.    This Court Has Jurisdiction Over Respondent Thomas Giles

35.    With respect to this Court's jurisdiction over Petitioner's habeas petition, given than Thomas Giles is the proper respondent, as he exercises actual control over Mr. Singh, this petition was properly filed in this district because the district

has jurisdiction over Thomas Giles.

36.    This issue was addressed by the Supreme Court in *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973). There, a petitioner challenged his future confinement in Kentucky while detained in Alabama. In that case, the Supreme Court simply required "that the court issuing the writ have jurisdiction over the custodian." *Id.* at 494-95 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody.")). *Padilla* did not overrule *Braden*, but reconciled it with the default rule. 542 U.S. at 444. Applying the default rule, which is inapplicable to the case at hand, the *Padilla* Court held that the respondent would naturally be in the same district as the petitioner's confinement.[9] *Id.* at 444. However, where the federal officer with immediate control over the petitioner is located in another district, the standard articulated in *Braden* is appropriate. As here, where the default rule is inapplicable, *Braden* holds that jurisdiction lies in the district where Thomas Giles, the *respondent*, is located.

37.    Therefore, Respondent Thomas Giles acting as the Acting Field Office Director for the Atlanta ICE Field Office, and who is located within the jurisdiction of the Northern District of Georgia, is the appropriate respondent to Mr. Singh's petition for habeas corpus.

14

## CLAIMS FOR RELIEF

### I.    *Due Process Violation*

38.    The Due Process Clause guarantees fair procedures prior to deprivations of liberty or property—including removal. *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").  Furthermore, Due Process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Bignall v. North Idaho College*, 538 F.2d 243, 246 (1976)(*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Petitioner has a liberty interest in remaining in the United States with his wife and U.S. citizen children. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996)("The interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment").

39.    Petitioner in this case is being denied what Due Process requires. Respondents are denying him the opportunity to be heard at a meaningful time— now—regarding his legitimate eligibility for both deferred action (issued to his spouse concurrently with his grant), as well as U nonimmigrant status.  Any interest Respondents have in detaining and deporting Petitioner does not justify his removal prior to a serious inquiry and review of ICE's directive to revoke

15

Petitioner's grant of deferred action and adjudication of the corresponding U visa application.

40.    Following a final order of removal, ICE is directed by statute to detain an individual for 90 days to effectuate removal. 8 U.S.C. § 1231(a)(2). This 90-day period, also known as "the removal period," generally commences as soon as a removal order becomes administratively final. 8 U.S.C. § 1231(a)(1)(A), § 1231(a)(1)(B).

41.    If ICE fails to remove an individual during the 90-day removal period, the law requires ICE to release the individual under conditions of supervision, including periodic reporting. 8 U.S.C. § 1231(a)(3) ("If the alien . . . is not removed within the removal period, the alien, pending removal, shall be subject to supervision."). Limited exceptions to this rule exist. Specifically, ICE "may" detain an individual beyond 90 days if the individual was ordered removed on criminal grounds or is determined to pose a danger or flight risk. 8 U.S.C. § 1231(a)(6). However, ICE's authority to detain an individual beyond the removal period under such circumstances is not boundless. Rather, it is constrained by the constitutional requirement that detention "bear a reasonable relationship to the purpose for which the individual [was] committed." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (*citations omitted*).

42.    The United State Supreme Court has accordingly construed Section

16

1231(a)(6) as authorizing post-final order detention only for a "period reasonably necessary to secure removal," a period that the Court determined to be presumptively six months. *Id.* at 699-701. After this six month period, if a detainee provides "good reason" to believe that his or her removal is not significantly likely in the reasonably foreseeable future, "the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the government cannot do so, the individual must be released.

43.     Even where detention meets the *Zadvydas* standard for reasonable foreseeability, detention violates the Due Process Clause unless it is "reasonably related" to the government's purpose, which is to prevent danger or flight risk. *See Zadvydas*, 533 U.S. at 690–91 (discussing twin justifications of detention as preventing flight and protecting the community). Thus, due process requires a meaningful determination that petitioner poses a danger or flight risk that warrants post-final-order detention, regardless of whether their removal can be effectuated within a reasonable period of time.

44.     The government's own regulations contemplate this requirement. They dictate that even after ICE determines that removal is reasonably foreseeable—and that detention therefore does not *per se* exceed statutory authority—the government must still determine whether *continued* detention is warranted based on flight risk or danger. *See* 8 C.F.R. § 241.13(g)(2) (providing that where removal

17

is reasonably foreseeable, "detention will continue to be governed under the established standards" in 8 C.F.R. § 241.4).

45.    The regulations, at 8 C.F.R. § 241.4, set forth the custody review process that existed even before the Supreme Court's decision in *Zadvydas*. This mandated process, known as the post-order custody review, requires ICE to conduct "90-day custody reviews" prior to expiration of the 90-day removal period and to consider release of individuals who pose no danger or flight risk, 8 C.F.R. § 241.4(e)-(f). Among the factors to be considered in these custody reviews are "ties to the United States such as the number of close relatives residing here lawfully;" whether the noncitizen "is a significant flight risk;" and "any other information that is probative of whether" the noncitizen is likely to "adjust to life in a community," "engage in further acts of violence," "engage in future criminal activity," pose a danger to themselves or others, or "violate the conditions of his or her release from immigration custody pending removal from the United States." *Id.*

46.    Mr. Singh fits within the factors enumerated above to have warranted his release from custody long before the filing of the instant habeas petition.

## II.    *Administrative Procedures Act and Mandamus: Statutory and Regulatory Violations*

47.    Compounding the circumstances of Mr. Singh's prolonged detention is ICE's tactic to immediately demand the revocation of Mr. Singh's approved

Deferred Action Status by USCIS was a clear abuse of discretion. ICE's motive was for the sole purpose of clearing a path for Mr. Singh's removal, and it was an egregious act by the Agency to separate Mr. Singh from his wife and two children.

48.    Mr. Singh was accorded Deferred Action status in October 2019, pursuant to 8 C.F.R. 214.14(d)(2). USCIS has the sole authority to grant and revoke deferred action status – it is not within the authority of ICE to recommend revocation of deferred action for an applicant. *Id.*; *see also* 8 C.F.R. 214.14(d)(3)( Deferred action or parole may be terminated at the discretion of USCIS). ICE's recommendation to USCIS to revoke the grant of deferred action calls into question their motivation – when a grant otherwise renders an applicant eligible for release from ICE custody simply for having lawful permission to remain in the U.S. A decision out of the Wester District of Washington supports the very contention presented by Mr. Singh. In *Fatty v. Nielsen*, the petitioner alleged that ICE assumed power over USCIS to issue a decision on a bona fide determination in connection with his pending T visa application. *See Fatty v. Nielsen*, Case No. C17-1535-MJP (WD WA, July 20, 2018). The Court agreed and found that "USCIS acted arbitrarily, capriciously, and in a manner inconsistent with the applicable regulations...[and] it appears that Mr. Fatty's bona fide determination was prepared by USCIS at the request of DHS...in response to Mr. Fatty's request to stay his removal". *Id.* Furthermore, similar to U visa applications, the Court

recognized that "T visa applications are to be adjudicated by USCIS, separate and apart from proceedings involving DHS and/or ICE." *Id.*, *see also* 8 C.F.R. § 214.11(e)(3).

49.    The Regulations at issue should be construed in harmony with due process and international law, which recognizes that "no one shall be subjected to arbitrary or unlawful interference with [her] … family," Art. 17, International Covenant of Civil and Political Rights, 999 U.N.T.S. 171 (entered into force Mar. 23, 1976; entered into force for the United States Sept. 8, 1992), and "[e]very person has the right to establish a family … and to receive protection therefor," Art. VI, American Declaration on the Rights and Duties of Man, O.A.S. Res. XXX (1948), O.A.S. Off. Rec. OEA/Ser. LV/I.4 Rev. (1965).

50.    An abuse of discretion is cognizable in habeas and under the Administrative Procedures Act.  The Petitioner requires a stay to afford him the opportunity to see his application through, particularly when USCIS agreed to approve him for deferred action in 2019, along with his wife.  The Court must give Mr. Singh his day in court and review the actions of the enforcement agency overstepping their bounds for the sole purpose of effectuating his removal, when he otherwise was eligible for the relief sought.  Mr. Singh's wife has been the victim of two armed robberies through her place of employment, yet she pushes forward because she must support their two children and keep their home in one piece until Mr. Singh

can return home to be with them.

51.    Additionally, a denial of stay or a failure to authorize a stay pending

adjudication of a U visa is an abuse of discretion if it is "arbitrary, irrational, or

contrary to law." *See, e.g. Singh v. I.N.S.*, 295 F.3d 1037, 1040 (9th Cir. 2002)

("BIA's order denying reopening and thereby requiring the deportation of an

individual with a valid claim for relief from deportation").

52.    A denial of stay, without reasonable justification, while a U visa is pending,

is "arbitrary, irrational, or contrary to law," precisely because it would disable

protections purposefully granted by Congress in "protecting victims of crimes who

have suffered substantial mental or physical abuse due to the crime and are willing

to help law enforcement authorities in the investigation or prosecution of the

criminal activity."[2]  It is also arbitrary and capricious for ICE to order the

revocation of deferred action status to Mr. Singh, when it was specifically

authorized by the agency that has discretion to do so.

53.    The foregoing allegations are realleged and incorporated herein.

### III.    Unlawful Detention

54.    Mr. Singh's continued detention by the Respondent violates 8 U.S.C. § 1231

(a)(6), as interpreted in the precedent case law.  Mr. Singh's detention for

---

[2] *Victims of Criminal Activity: U Nonimmigrant Status*, https://www.uscis.gov/humanitarian/victims-human-trafficking-and-other-crimes/victims-criminal-activity-u-nonimmigrant-status.

approximately 16 months *after* his order or removal is unreasonable.  Given the

circumstances of Petitioner's detention, the pending U visa, the approval and grant

of an expedited prima facie determination and deferred action status before

arbitrary revocation, Petitioner's continued detention is without justification. For

the reasons outlined above, Petitioner should be released immediately.

55.     Petitioner's continued detention by Respondents is an unlawful violation of

Petitioner's Fifth Amendment rights to due process because Petitioner has a right

to continue pursuit of his U visa application and reinstatement of his deferred

action status, and he is not a flight risk or a danger to the community.

56.     Mr. Singh's continued detention violates his right to substantive due process

by depriving him of his core liberty interest to be free from bodily restraint. *See,*

*e.g., Tam v. INS*, 14 F.Supp.2d 1184 (E.D. Cal 1998)(aliens retain substantive due

process rights).  The Due Process Clause requires that the deprivation of

petitioner's liberty be narrowly tailored to serve a compelling government interest.

*See Reno v. Flores*, 507 U.S. 292, 301-02 (1993).  Respondents do not have a

compelling government interest in detaining Mr. Singh post-removal-order, and

after the designated statutory period. The Supreme Court in *Zadvydas* thus

interpreted 8 U.S.C. § 1231(a) to allow continued detention only for a period

reasonably necessary to secure the alien's removal because any other reading

would go beyond the government's articulated interest-- to effect the alien's

removal. *See Kay v. Reno*, 94 F.Supp.2d 546, 551 (M.D. Pa. 2000) (granting writ of habeas corpus because petitioner's substantive due process rights were violated, and noting that "[i]f deportation can never occur, the government's primary legitimate purpose in detention--executing removal--is nonsensical"). Again, *Ly v. Hansen* takes the position that *Zadvydas* is not only limited to post removal detention, but that pre-removal detainees should be accorded the very same liberty interests.

57.     Finally, Petitioner's latest plea was for his release from ICE custody on April 17, 2020, through the filing of a request for parole. *See Exhibit A*, Renewed Request for Release from Custody for Urgent Humanitarian Reasons and Significant Public Benefit. ICE has yet to respond to the request.

58.     Mr. Singh's request for parole highlights the latest in the deplorable conditions to which he is subject at Stewart Detention Center and how the current situation with Covid-19 leaves him vulnerable to serious complications because he would be considered high risk if infected with the virus. Specifically, Mr. Singh is a 55-year old man and was diagnosed with high blood pressure since being placed in detention. *Id.*

59.     Furthermore, on June 4, 2020, Susan Krysak, a friend of Mr. Singh and his family, drafted and sent an email to counsel and Mr. Singh's spouse, relaying events that occurred in connection with a fellow inmate who tested positive for

Covid shortly after being brought into Stewart Detention Center and placed in Mr. Singh's same pod. *See Exhibit B*, Copy of Email Correspondence (in lieu of formal declaration due to time constraint). As a result of the fellow detainee's positive Covid test, and after he was removed from the pod due to becoming very ill, Mr. Singh's pod has now been placed under a 14-day quarantine. *Id.*

60.    It is simply unsafe, and unjustifiable for ICE to continue Mr. Singh's detention under the circumstances, specifically, in light of the fact that had ICE not arbitrarily demanded the revocation of Mr. Singh's deferred action status, he would have been released from custody long before Covid ever struck the detention centers nationwide. Detainees are starting to die as a result of this disease, and ICE is simply shifting detainees between the detention centers rather than taking adequate precautions to prevent the continuous spread. *See Exhibit C*, Article confirming the second Covid-19 death at Stewart.

61.    Mr. Singh is a good man and father, he is not a flight risk, he is not a danger to the community, he has relief available, and ICE must be held accountable for restoring the deferred action status he was properly accorded, and he must be released from custody immediately. Many in the community speak highly of Mr. Singh, and the attached affidavit is but one example of what he means to his community and how he is suffering during the unnecessary detention. *See Exhibit D*, Affidavit of Susan Krysak.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Stay Mr. Singh's removal pending a decision on the habeas petition;

4) Grant Mr. Singh a Writ of Habeas Corpus directing the Respondents to immediately release him from custody under reasonable conditions of supervision; and

5) Grant any other and further relief which this Court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct.

Respectfully submitted this 5th day of June, 2020.

KUCK BAXTER IMMIGRATION LLC,

/s/ Danielle M. Claffey
Danielle M. Claffey
GA Bar Number: 222292
365 Northridge Road, Suite 300
Atlanta, GA 30350
Phone: 404-949-8151
Fax: 404-816-8615

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 5th day of June, 2020, the foregoing **FIRST AMENDED PETITION FOR A WRIT OF HABEAS CORPUS AND PETITION FOR FEDERAL INJUNCTION** and its accompanying Exhibits were served by ECF filing on:

Chad Wolf
Acting Secretary, Department of Homeland Security
425 I Street
Washington, D.C. 20536

Thomas Giles
Acting Field Office Director,
U.S. Immigration and Customs Enforcement
180 Ted Turner Drive, SW
Atlanta, Georgia 30303

Mark Koumans, Acting Director
U.S. Citizenship and Immigration Services
20 Massachusetts Avenue, NW
Washington, DC 20529

Byung J. Pak, U.S. Attorney
Federal District Court, Northern District of Georgia
The United States Attorney's Office, Richard B. Russell Federal Building
75 Ted Turner Drive, S.W., Suite 600
Atlanta, Georgia 30303-3309

KUCK BAXTER IMMIGRATION LLC,

/s/ Danielle M. Claffey
Danielle M. Claffey
GA Bar Number: 222292
365 Northridge Road, Suite 300
Atlanta, GA 30350
Phone: 404-949-8151
Fax: 404-816-8615

26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PARAMJIT SINGH, | ) | Civil Action No. |
| | ) | |
| A091-822-575, | ) | |
| | ) | 1:20-cv-02212-AT-LTW |
| Petitioner/Plaintiff, | ) | |
| v. | ) | |
| | ) | FIRST AMENDED PETITION FOR |
| CHAD WOLF, Acting Secretary, | ) | WRIT OF HABEAS CORPUS |
| Department of Homeland Security; | ) | |
| THOMAS GILES, Acting Field Office | ) | |
| Director, U.S. Immigration and Customs | ) | |
| Enforcement, MARK KOUMANS, | ) | |
| Acting Director, U.S. Citizenship and | ) | |
| Immigration Services, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## LIST OF EXHIBITS

Exhibit A    Renewed Request for Release from Custody for Urgent Humanitarian Reasons and Significant Public Benefit

Exhibit B    Copy of Email Correspondence

Exhibit C    Article confirming the second Covid-19 death at Stewart

Exhibit D    Affidavit of Susan Krysak

27